UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

Tricot Industries Pvt. Ltd.

          Plaintiff,

              -against-

DIGITAL BRANDS GROUP, INC.
dba DSTLD a/k/a Denim.LA, Inc.;
AND DOES 1-10,

              Defendant.

Docket No. _____

**VERIFIED COMPLAINT**

Plaintiff Tricot Industries Pvt. Ltd. ("Plaintiff" or "Tricot"), by their undersigned attorneys, Chhetry & Associates, P.C., for their Complaint against Defendant Digital Brands Group, Inc. dba DSTLD aka/ Denim.LA. Inc., ("Defendant" or "DBG") and DOES 1-10, allege as follows:

## NATURE OF THE ACTION

1. This is an action for money damages, declaratory judgment, and enforcement of a settlement agreement entered by and between Plaintiff and Defendant on March 31, 2022. Defendant has materially breached its obligation to make monthly payments to Plaintiff for goods rendered as required by the Parties' agreement.

## PARTIES

2. Plaintiff, Tricot Industries Pvt. Ltd. is a textile manufacturing company supplying knitwear products globally. Plaintiff is incorporated in Nepal and has a principal place of business located at Hyatt Place, Chinnalata Chowk, 3rd Floor, Kathmandu, Nepal.

1

3.  Upon information and belief, Defendant Digital Brands Group, Inc. dba DSTLD a/k/a Denim.LA, Inc., and DOES 1 through 10, inclusive, is a designer, importer, wholesaler, and/or retail clothing company. Upon information and belief, Defendant is incorporated in the State of Delaware with registered subsidiaries, affiliates, and/or branch offices in the states of New York, California, and a principal listed office address at 1400 Lavaca Street, Austin, Texas 78701. The true names of DOES 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues said defendants by such fictitious names and will seek leave to amend this complaint to show their true names and capacities when the same have been ascertained.

4.  Hereinafter, Defendant Digital Brands Group, Inc. dba DSTLD a/k/a Denim.LA, Inc., and DOES 1 through 10, inclusive, shall be referred to collectively as "Defendant" or "DBG".

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between each Plaintiff and the Defendant, and the amount in controversy exceeds $75,000. Diversity of citizenship exists because Plaintiff is a citizen of Nepal, and, upon information and belief, Defendant is a citizen of Delaware, New York, Texas, and California. This Court also retains supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.  Personal jurisdiction over Defendant is proper. In the Settlement Agreement between Defendant and Plaintiff, Defendant consented for the agreement's enforcement governed under the laws of the State of New York. Thus pursuant to N.Y. C.P.L.R. § 302(a), jurisdiction is proper. Defendant has committed a tortious act in this State and Judicial

District, by way of breaching the Settlement Agreement which was negotiated and made in this Judicial District, and thus Defendant would reasonably expect such breach would have consequences within this Judicial District.

7. Pursuant to 28 U.S.C. § 1391, venue properly lies in this Judicial District because a substantial part of the events giving rise to the claims herein occurred in this Judicial District by way of the formation of the Settlement Agreement, made and negotiated within this Judicial District, and Defendant's breach of the Settlement Agreement is the cause of the claim by Plaintiff.

8. Further, Defendant has conducted business in the State of New York as a registered entity in this Judicial District, and thus a resident within this Judicial District.

9. This Court has the authority to hear causes of action seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A. The Parties' Business

10. Plaintiff is knitting and weaving manufacturing company registered in Nepal incorporated on December 4, 2005, with an extensive international client base. Plaintiff manufactures natural cashmere and wool products from yarns such as alpaca, yak wool, silk, and merino wool blends, among others, and supplies a vast range of products including, but not limited to, sweaters, scarves, shawls, and blankets in small and bulk quantities.

11. Upon information and belief, Defendant is a Delaware registered apparel company founded in 2013 with additional registered entities in New York, Texas, and California, that designs, imports, wholesales, and/or retails clothing such as jeans, tops, outerwear,

and accessories. It is publicly traded on the NASDAQ Composite stock exchange under the "DBGI" ticker.

B.  Defendant's Failure to Timely Submit Payment for Goods Rendered

12. In 2019, Defendant placed an order for goods from Plaintiff with delivery taking place later the same year. A final invoice was generated by Plaintiff to Defendant in the total amount of $335,245.00. Defendant was to make payment in full upon delivery of the goods. Defendant did not dispute or reject any of the goods as damaged or non-conforming.

13. From June 2019 to December 2021, Defendant made a series of late payments to Plaintiff from the balance of the total amount due. During this time, Plaintiff made a total payment of $174,300.00. Plaintiff placed a penalty interest for the late payments unto the balance.

14. On February 17, 2022, counsel for Plaintiff sent a final demand letter for payment to Defendant in the amount of $217,111.70 to be paid within 30 days. Upon receipt of the demand letter, Defendant proposed to make a monthly installment plan to pay off the remaining balance with the agreement of Plaintiff.

15. On March 31, 2022, Plaintiff and Defendant entered into a Settlement Agreement (the "Agreement"), whereby, Defendant was to pay an agreed monthly amount including interest, and legal fees under a specific schedule. *See* Settlement Agreement as "**Exhibit A**". The Agreement specifically states that timely payment was of the essence and any failure to make payments timely be deemed as a material breach.

16. The Agreement provided for Defendant to make a payment of $5,000.00 upon execution followed by monthly payments in the amount of $15,000.00 per month for April and

May 2022. Thereafter, commencing on June 30, 2022, and on the last date of each month therefrom, Defendant agreed to pay Plaintiff a monthly sum of $24,749.61 until December 30, 2022, or earlier, until the total remaining amount had been satisfied.

17. As per the Agreement, on March 31, 2022, Defendant remitted a payment of $5,000.00 to Plaintiff by wire transfer.

18. On April 29, 2022, Defendant requested a one-week extension for the next monthly payment to which Plaintiff acquiesced. On May 11, 2022, Defendant remitted a payment by wire transfer to Defendant in the amount of $15,000.00. Defendant also remitted the next payment on time by wire transfer to Defendant in the amount of $15,000.00 on May 31, 2022 as per the agreed schedule.

19. Since the last payment made on May 31, 2022, Defendant has failed to make any further payments to Plaintiff.

   C.  Defendant's Breach of the Settlement Agreement

20. On June 30, 2022, Defendant notified Plaintiff's counsel that due to a vendor placing a fraudulent lien on their account, all funds were blocked and thus payment was not possible until the release of the lien. Plaintiff acknowledged this issue and through its counsel, allowed Defendant additional time to resolve the account issue under the belief of Defendant's good faith that Defendant would continue to make payments as soon as practicable.

21. On August 17, 2022, Defendant notified Plaintiff's counsel that payments could be restarted beginning the end of the month.

22. On or about September 2022, Defendant spoke with Plaintiff's counsel on the phone.

Defendant mentioned that due to a funding crunch, they were raising additional capital by the issuance of new shares to be floated on the public market.

23. On September 26, 2022, Defendant notified Plaintiff's counsel that Defendant could begin making payments beginning the end of October 2022 in the amount of $15,000.00 a month. Through its counsel, on September 29, 2022, Plaintiff agreed and acknowledged Defendant's proposition under the impression and belief of Defendant's good faith.

24. On October 21, 2022, Defendant requested an additional extension for the next payment to be made in mid-November. Plaintiff, through its counsel, acknowledged and agreed to this as the final extension.

25. On November 4, 2022, Defendant notified Plaintiff's counsel that it was submitting a Form S-1 filing with the Securities and Exchange Commission ("SEC") for purposes of raising additional capital through the issuance of new shares.

26. On November 22, 2022, Defendant notified Plaintiff's counsel that it received light comments from the SEC the previous day and expected the shares to be priced and funded around December 2, 2022. Thereafter, due to the holidays, and Defendant's principal representative stating he contracted COVID-19, no further update was provided.

27. On January 15, 2023, Defendant offered Plaintiff to begin making payments at the end of January 2023 in the amount of $15,000.00. In response through its counsel, Plaintiff rejected Defendant's offer for such untimely payment despite Defendant receiving multiple extensions.

28. Defendant has materially breached the Settlement Agreement entered between Plaintiff

and Defendant. As per the proposed schedule, Defendant was to have satisfied the entire remaining balance of the invoice by December 30, 2022. Despite numerous extensions, patience, and understanding from Plaintiff, Defendant continued to delay or excuse the rendering of payment to Plaintiff.

29. Defendant's obligation to make timely payments was not conditioned on any successful or profitable sale of its products, economic market conditions, or based on any approval or successful raise of additional capital to make the scheduled payments.

30. Defendant's refusal to honor its obligations to make timely payments, starting from the original invoice, and the Settlement Agreement, constitutes a material breach between the parties' understanding. Defendant's attempts to continuously delay and excuse its obligations, to which Plaintiff was accommodating under good faith to a certain extent, has now stretched far beyond Plaintiff's capacity to accommodate, and is a wrongful attempt to re-negotiate an understanding under which Plaintiff had hoped Defendant would comply.

31. Defendant owes Plaintiff interest on the invoiced amounts not timely paid, which accrues at a contractually specified rate of 8% (eight percent) per month until the full obligation amount is satisfied. As of January 30, 2023, Defendant owes an outstanding principal balance of $178,631.77 and interest in the amount of $4,795.16 for a total amount of at least $183,426.93 owed to Plaintiff, accruing additional interest monthly until fully paid, and legal fees.

32. Public investor relation filings with the SEC show that an offering of securities to raise additional capital was made in January 2023.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

33. Plaintiff realleges paragraphs 1 through 32 above and incorporate them by reference as if fully set forth herein.

34. Tricot has fulfilled all of its obligations under the original order of goods placed by Defendant and is not in breach of any contract or agreement with Defendant.

35. Defendant has materially breached its obligations to make timely payment to Defendant stemming from the original invoice from December 2021.

36. Defendant has materially breached its obligations to make timely payments as per the Settlement Agreement entered between Defendant and Plaintiff by failing to make timely payments from June 30, 2022, onwards.

37. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered, and continues to suffer, damages in amount to be determined at trial and currently exceeds $183,426.93, accruing additional interest monthly until fully paid, and legal fees.

## SECOND CLAIM FOR RELIEF
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

38. Plaintiff realleges paragraph 1 through 37 above and incorporate them by reference as if fully set forth herein.

39. Implied in all contracts governed by New York law is a covenant of good faith and fair dealing, which obligates all parties to act in good faith, to use their best efforts to deal fairly with one another, and to avoid impeding the other party from obtaining the benefits of the contract.

40. Defendant improperly asked for multiple extensions, yet Plaintiff accommodated under

good faith assumption of Defendant's circumstances, and that payment from Defendant was forthcoming. Defendant continued to test Plaintiff's patience and make false assurances of payments to be made by a certain period after such extensions, but failed to do so each time.

41. By its conduct set forth above, Defendant has breached the covenant of good faith and fair dealing and has wrongfully deprived, impaired, and injured Plaintiff's enjoyment of the rights, benefits, and full value and fruits of the Agreement despite Plaintiff's performance of all its contractual obligations owed to Defendant and patience and leniency towards Defendant in accommodating certain requested extensions.

42. As a direct and proximate result of the breach by Defendant of the covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be determined at trial and currently exceeds $183,426.93, accruing additional interest monthly until fully paid and legal fees to enforce the Settlement Agreement.

### THIRD CLAIM FOR RELIEF
### ACCOUNT STATED AGAINST DEFENDANT

43. Plaintiff realleges paragraphs 1 through 42 above and incorporate them by reference as if fully set forth herein.

44. Plaintiff, through its counsel, submitted to Defendant copies of updated outstanding amounts after each extension provided by Plaintiff to Defendant with periodic statements acknowledging previous payments made by Defendant and remaining balance including interest for late payments, all of which were received without objection by Defendant, thus creating an account stated.

45. By reason of the foregoing, there is a current outstanding due of at least 183,426.93,

accruing additional interest at the agreed rate per monthly until fully paid.

## FOURTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

46. Plaintiff realleges paragraphs 1 through 45 above and incorporate them by reference as if fully set forth herein.

47. Defendant is, or was prior to any resale, in possession of clothing manufactured and delivered by Plaintiff and thus Defendant has unjustly received a benefit of such action or inaction to the detriment of Plaintiff.

48. Defendants have benefitted either from the possession, marketing, or sale of the clothing to third party purchasers.

49. Furthermore, it would be inequitable for Defendant to be allowed to retain or otherwise sell Plaintiff's property without being ordered to pay the remaining outstanding balance of $183,426.93, accruing additional interest monthly until fully paid.

## FIFTH CLAIM FOR RELIEF
## OPEN BOOK ACCOUNT AGAINST DEFENDANT

50. Plaintiff realleges paragraphs 1 through 49 above and incorporate them by reference as if fully set forth herein.

51. Upon receiving delivery and invoice from Plaintiff, Defendant became indebted to Plaintiffs in the sum of $335,245.00.

52. After a series of payments from June 2019 to May 2022, Defendant stopped rendering payments and is indebted to Plaintiff on an open book account in the sum of at least $183,426.93, accruing additional interest monthly until paid full, and legal fees.

## SIXTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT

53. Plaintiff realleges paragraphs 1 through 52 above and incorporate them by reference as if fully set forth herein.

54. There is substantial controversy and a live dispute between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The dispute, therefore, between Plaintiff and Defendant is a justiciable controversy appropriate for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

55. Plaintiff has fulfilled all of its obligations under the original order placed by Defendant in 2019, and has been beyond accommodating to Defendant in providing good faith extensions for payments to be rendered as per the Settlement Agreement schedule.

56. A declaratory judgment that the Settlement Agreement remains in full force and effect and that no force majeure event or occurrence excuses Defendant's ongoing performance of all of its obligations under the Settlement Agreement will prevent the necessity of multiple successive lawsuits to recover payments of each monthly invoice that Defendant fails to pay timely during the remaining term of the Settlement Agreement. Declaratory judgment also will prevent irreparable harm to the Plaintiffs that will result should the Defendant invoke Force Majeure to effect a unilateral modification and early termination of the Settlement Agreement.

57. Accordingly, Plaintiffs are entitled to the entry of a judgment declaring that the Settlement Agreement remains in full force and effect and that no force majeure event or other occurrence excuses Defendant's ongoing performance of all of its obligations

11

under the Settlement Agreement, including its obligation to make timely payment each month for goods delivered by Plaintiff as per the Settlement Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Tricot Industries Pvt. Ltd respectfully request that the Court judgment as follows:

a. That Defendant has materially breached its obligation to timely pay the Plaintiff's December 2019 invoice;

b. That Defendant has materially breached its obligations as per the Settlement Agreement with Plaintiff by failing to timely make payments from June 30, 2022 to December 30, 2022;

c. That Plaintiff is entitled to an award of damages arising out of Defendant's material breach of the invoice and Settlement Agreement, in an amount satisfying the full unpaid amount of the Settlement Agreement, plus interest on unpaid amounts accrued at the monthly rate set forth in the Settlement Agreement through the date of final judgment;

d. Declaring that the Settlement Agreement remains in full force and effect and that no force majeure event or occurrence excuses Defendant's ongoing performance of all of its obligations under the Settlement Agreement, including its obligation to make timely payment of month as scheduled, for goods delivered by Plaintiff to Defendant in 2019;

e. Declare that Defendant is required to specifically perform all remaining obligations as per the Settlement Agreement;

f. Defendant be required to reimburse Plaintiff's legal costs and attorney fees

in bringing this action to enforce the Settlement Agreement due to

Defendant's material breach; and

g.   Such other relief as this Court deems just and proper.

Dated: New York, New York
       January 23, 2023

CHHETRY & ASSOCIATES, P.C.

By: _____

Khagendra Gharti-Chhetry, Esq.
363 7th Avenue, 15th Floor
New York, NY 10001
Tel: (212) 947-1079
Fax: (212) 947-1081
Email: kc@chhetrylaw.com

*Attorneys for Plaintiff*
*Tricot Industries Pvt. Ltd.*

## VERIFICATION

I, SHAKTI KUMAR GOLYAN, being duly sworn, declare as follows:

1. At all relevant times, I was, and am, Managing Director of Tricot Industries Pvt. Ltd.

2. As such, I hereby verify and affirm that the information and contents in the VERIFIED COMPLAINT are true and correct to the best of my information and belief.

3. I have personal knowledge of the facts set forth herein, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true, and if called to testify as to these matters would do so competently.

4. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This 22 day of January 2023

_____
SHAKTI KUMAR GOLYAN

# EXHIBIT#A

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is entered into this as of the undersigned date ("Effective Date") by and between DIGITAL BRANDS GROUP, INC., a corporation registered in the State of Delaware, with its owners, officers, directors, successors, and assigns (hereinafter collectively referred to as "DBG") and Tricot Industries Pvt. Ltd ("Tricot"), a private limited company registered in Nepal. DBG and Tricot are hereinafter collectively referred to as the "Parties" and each as a "Party".

WHEREAS, DBG, then known or operating as Denim.LA/DSTLD, as buyer, and Tricot, as seller, entered into a transaction for the supply and sale of certain clothing materials (the "Goods") on or about June 2019 for delivery from Kathmandu, Nepal to Los Angeles, California (hereinafter referred to as the "Transaction").  The total payable amount invoiced by Tricot to DBG for the above Goods amounted in the sum of $335,801.25 (the "Payable Amount").

WHEREAS, in November and December 2019, Tricot delivered the Goods to DBG, and DBG accepted delivery from Tricot. Since delivery, DBG has paid to Tricot a total of $174,300.000 from the Payable Amount.

WHEREAS, it is has been agreed by the Parties that the above outstanding amount, plus a rate interest of 8% (eight percent) and legal fees, totaling **$208,247.24**, shall be made payable by DBG to Tricot based on the payment schedule as set forth in this Agreement.

NOW THEREFORE, in consideration of the mutual promises contained herein as well as for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree to settle their dispute on the following terms:

1.  Upon execution of this Settlement Agreement, or by March 31, 2022, whichever is earlier, DBG agrees to pay Tricot the sum of **$5,000.00**.

2.  Commencing on the last date of April and May 2022 (April 30, 2022 and May 31, 2022), DBG agrees to pay Tricot the sum of **$15,000.00** for each month.

3. Commencing on June 30, 2022, and the last date of each month thereafter, DBG agrees to pay Tricot the monthly sum of **$24,749.61** until December 30 or until the Payable Amount has been satisfied, whichever is earlier.

4. DBG may, at its discretion, elect to pay Tricot more than any of the above amounts, but not less.

5. Payment shall be made by wire transfer to Tricot bank account in Nepal as follows:

   Tricot Industries Pvt. Ltd.
   Siddhartha Bank Ltd.
   Hattisar Branch
   Kathmandu, P.O. Box 13800
   Account No. 00401678630
   SWIFT: SIDDNPKA

6. All due dates set forth in this Agreement is considered as TIME BEING OF THE ESSENCE and failure to make timely payment under this Agreement shall be deemed a material breach of the terms herein.

7. Payment shall be considered as timely based on receipt of a wire confirmation by or before the payable dates as set forth in this Agreement.

8. In the event of a breach of this Agreement, the breaching party shall be liable to the non-breaching party for the remaining Payable Amount, plus interest, costs and disbursements, including reasonable attorneys' fees, incurred to enforce this Agreement.

9. In the event of a failure to make payments timely, DGB hereby authorizes Tricot, at its discretion, to enforce this Agreement by an entry of summary judgment in lieu of a complaint before a valid court of jurisdiction and or waives any and all rights that DGB may have related to: requiring a service of summons and complaint in an action to collect the debt for which DBG confesses judgment; an opportunity to appear in any action on the debt and defend or counterclaim the same; notice of entry or intended entry of judgment; the domestication of such judgment in any other jurisdiction or county; and any appeal or other action, hearing or proceedings which would be otherwise available.



2

10. This Settlement Agreement constitutes the entire agreement among the Parties pertaining to the subject matter hereof and supersedes all prior or contemporaneous statements, negotiations, and agreements made by, or on behalf of, any party in connection to the Transaction.

11. This Agreement cannot be changed, modified or altered except by a written agreement by the Parties.

12. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

13. An electronic signature by DocuSign or emailed signature of this Settlement Agreement by the listed email addresses of the undersigned shall be deemed as an original for purposes of this Agreement.

14. Each Party hereto represents and warrants that (i) he/she or it has the power and authority to execute and deliver this Settlement Agreement; (ii) the execution, delivery, and performance of this Settlement Agreement or any related agreement does not and will not contravene the terms of any applicable agreements, instruments or laws; (iii) he/she or it has the full power and authority to perform the obligations under this Agreement and to consummate the Transaction contemplated thereby; and (iv) the Settlement Agreement constitute its legal, valid, and binding obligation in accordance with its terms. This paragraph shall survive the delivery of documents and consideration required herein and any termination of this Settlement Agreement. The Parties acknowledge that the representations and warranties made in this paragraph and in other parts of this Agreement constitute material inducements to enter into this Agreement.

15. Notice under or concerning this Agreement shall be sent by a Party, or its counsel, by regular mail and email as follows:

    If to Tricot Industries Pvt Ltd:

        Kumar Sanu
        Hyatt Place, 3rd Floor
        Chinnalata Chowk
        Soalteemode, Kathmandu, Nepal
        Kumar.sanu@golyangroup.com

    With a copy by email to:

3

Khagendra Chhetry, Esq.
Chhetry & Associates, P.C.
363 7th Avenue, 15th Floor
New York, NY 10001
kc@chhetrylaw.com

If to Digital Brands Group:

Hil Davis
Denim.LA, Inc. AKA Digital Brands Group. Inc.
4700 South Boyle Avenue
Vernon, CA 90058
hil@dstld.la

16. This Agreement shall be governed, construed and interpreted and enforced in accordance

with the substantive laws of the State of New York, without giving effect to the principles of

conflicts of laws.

IN WITNESS WHEREOF, and intending to be legally bound, the parties hereto have executed
the foregoing Settlement Agreement:

FORM AND CONTENT ACCEPTED AND AGREED TO BY:

DATE: 3/30/2022          By: _____
                              Hil Davis
                              CEO
                              Digital Brands Group, Inc.
                              Email: hil@dstld.la

DATE: 3/31/2022          By: _____
                              Kumar Sanu
                              Head-Internal Audit
                              Tricot Industries Pvt. Ltd.
                              Email: kumar.sanu@golyangroup.com

4

CERTIFICATE OF SERVICE

I, Khagendra Gharti-Chhetry, certify that on January 23, 2023, I served one set of VERIFIED COMPLAINT by electronically by ECF filing and by USPS mailing up Attorney for Respondents and parties at the following addresses:

DIGITAL BRANDS GROUP, INC.

dba DSTLD a/k/a Denim.LA;

1- Principal office address: 1400 Lavaca Street, Austin, TX 78701

2. NY address (Denim.LA, Inc.): 123 William Street, New York, NY, 10038

3. California address: 4700 S Boyle Ave, Los Angeles, CA 90058

Khagendra Gharti Chhetry, Esq

Chhetry & Associates, P.C.

363 7th Avenue, Suite 1500

New York, NY 10001

Tel.: (212) 947-1079

Fax: (212) 947-1081

14